**Albert Lee EVANS, Jr., Appellee,**

v.

**Warden Sam P. GARRISON, and State of North Carolina, Appellants.**

**Jesse Steve LIPE, Appellee,**

v.

**Sam P. GARRISON, and the State of North Carolina, Appellants.**

**Nos. 80–6622, 80–6623.**

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1981.

Decided Aug. 13, 1981.

Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief), for appellants.

John B. Yorke, Charlotte, N. C. (H. Edward Knox, John S. Freeman, Wardlow, Knox, Knox, Robinson & Freeman, Charlotte, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

HAYNSWORTH, Senior Circuit Judge:

Pursuant to a plea bargain, Evans and Lipe tendered guilty pleas to drug offenses in a state court. The pleas were accepted, and two consecutive prison sentences were imposed. The state court then ordered that

each was not to be considered for parole until he had paid $2,500 to the North Carolina Bureau of Investigation Drug Division. The design was to reimburse the drug division for the expenses it had incurred in investigating the charges and obtaining the proof which led to the tender of the guilty pleas. Relief was denied in state court post-conviction proceedings, but the federal court ordered that the parole eligibility condition be stricken.

The question is whether, under these circumstances, the guilty pleas were voluntary and intelligent.

■ A guilty plea may be voluntary and intelligent when a defendant is informed of the direct consequences of the plea, though he may remain uninformed of collateral consequences. See *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1365 (4th Cir. 1973). Usually parole eligibility is not a direct consequence of a guilty plea. *See, e. g., Bell v. North Carolina*, 576 F.2d 564, 565 (4th Cir. 1978); *Bell v. United States*, 521 F.2d 713, 715 (4th Cir. 1975). In *Bell v. North Carolina*, we held that one who had entered a plea of guilty to a murder charge and been sentenced to life in prison had acted voluntarily, notwithstanding that he was not informed that the recipient of a life sentence was not eligible for parole until after 20 years service of the sentence under the applicable North Carolina statutes. We were of the view that the statutory scheme did not deny a defendant in such circumstances parole eligibility "that he could reasonably think was within his power to earn." 576 F.2d at 566 (quoting *Bell v. United States*, 521 F.2d 713, 715 (4th Cir. 1975).

The imposition of special conditions upon parole eligibility, however, stands upon a different footing. In *Paige v. United States*, 443 F.2d 781 (4th Cir. 1971), we held that the plea was involuntary when the defendant was not advised that his conviction would be treated as a second offense, which would make him ineligible for parole. In this case, the plea bargain was spread upon the record. It contained no reference to a possible imposition of any restitution condition upon parole eligibility. Nor did the defendants have any reason to foresee the possible imposition of such a condition.

■ The condition is unauthorized by any North Carolina statute. Her statutes do authorize the imposition of a condition upon parole eligibility of restitution to victims of crime who have suffered economic loss as a result of that crime, but law enforcement agencies are not within the class of such victims.

Section 15A–1021(d), N.C.G.S., specifically provides that restitution may be made a condition of parole upon a plea of guilty when the bargained agreement provides for it. Section 148–57.1(c) is a general authorization for the imposition of such a condition. Whether or not that section applies to sentences imposed upon guilty pleas entered pursuant to a plea bargain, we need not consider, for it specifically refers to § 15A–1343(d) for the kind of restitution about which § 148–57.1(c) speaks. Under § 15A–1343(d), as a condition of parole "a defendant may be required to make restitution . . . to an aggrieved party or parties . . . for the damage or loss caused by the defendant arising out of the offense or offenses for which the defendant has been convicted." Restitution is defined as "compensation for damage or loss as could ordinarily be recovered by an aggrieved party in a civil action." A government agency may be an aggrieved party, but "no government agency shall benefit by way of restitution . . . except for particular damage or loss to it over and above its normal operating costs." Finally, the statute declares that restitution measures are ancillary remedies available for rehabilitative purposes and for the compensation of victims of crime and are not fines or any other punishment. *See id.*

From the foregoing, it is readily apparent that the North Carolina Bureau of Investigation is not a "victim of crime" within the meaning of the statute. It could qualify as such a victim if it suffered losses through embezzlement, but its expenses in investigating the drug offenses were among its normal operating costs, restitution of which

is specifically excluded by the statute. Of course, those expenses were not "damage or loss as could ordinarily be recovered by an aggrieved party in a civil action" as required by the statute.

■ Conditioning parole upon payments to the North Carolina Bureau of Investigation in reimbursement for estimated investigative expenses was illegal under state law and quite unanticipated by anything said in connection with the negotiation of the plea bargains or the acceptance of the pleas. It was clearly a special limitation on parole eligibility within the meaning of *Bell v. North Carolina, supra,* 576 F.2d at 565. As such, its imposition without having advised these two men of it before acceptance of their pleas made their pleas both involuntary and unintelligent. It probably also amounted to an imposition of punishment in excess of that authorized by North Carolina law and, as such, to violation of the due process clause of the Fourteenth Amendment. *See Whalen v. United States,* 445 U.S. 684, 689 n.4, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980).

■ The district court properly found what was done impermissible, but it treated the parole condition as a violation of the plea bargain. It ordered that the prosecutor's bargain be enforced and the illegal conditions be stricken from the judgments. We doubt its authority to do what it did, but since the sentence was in violation of the federal constitutional rights of the two defendants, the district court had the right conditionally to grant the writ of habeas corpus the two state defendants had sought. The state trial court, however, should be given the choice of striking the illegal conditions from the judgments and taking appropriate steps to correct the erroneous advice to the Parole Commission[1] or suffer the discharge of these two men under federal writs of habeas corpus.

The case is remanded to the district court with direction to issue a writ of habeas corpus if within a reasonable time the illegal conditions are not stricken from the judgments and the misadvice to the Commission corrected.

REMANDED.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the opinion of the court so far as it holds that the sentence imposed was illegal because of the illegal condition of restitution made a part of the sentence by the trial court.

I respectfully dissent, however, from that part of our opinion requiring the Attorney General of North Carolina to correct his advice given to the Parole Commission. The letter from the Special Deputy Attorney General to the Chairman of the Parole Commission was a letter from an attorney to his client giving him advice. From that letter, part 1 and prior text, we must assume that the prisoners will first be eligible for parole in August 1982, for the record does not show to the contrary and no claim is made to that effect.

The letter, in part 2 thereof, advises the Parole Commission that if the State loses the appeal on the validity of the trial judge's condition placed upon the sentence, then the Parole Commission "may not" treat the trial judge's condition as a recommendation as to what decision the Parole Commission may make. Since the State has lost this part of the appeal, the advice of the attorney to the Parole Commission was favorable to the prisoners, and the State may not treat the trial court's condition even as a recommendation. So this part of the case is finished; the prisoners have won it, and the letter makes no difference. Indeed, any difference the advice in the letter may make in this respect is favorable to the prisoners.

---

1. A Special Deputy Attorney General wrote a letter to the Parole Commission after the proceedings in the district court were completed in which he advised the Commission that it might, in its discretion, impose the condition which the district court had found unlawful. The

Parole Commission has no power to impose such a condition for the same reasons that, under N.C.G.S. 15A–1343(d), a court may not. Appropriate steps should be taken to correct the erroneous advice to the Commission.

The next advice the letter in question, part 3 thereof, gives the Parole Commission is that it "on its own decision may" impose restitution mentioned by the trial judge as a condition of parole. The Parole Commission has not acted on this letter, and, indeed, it has not acted at all with respect to these prisoners' parole, not on account of this law suit but on account of the fact they are not yet eligible. When it does act, it may not heed the advice of its attorney, and the attorney specifically sets out in his opinion that any action of the Parole Commission in this respect is discretionary rather than mandatory. I think that until the Parole Commission has acted, especially absent some mandatory or binding opinion of the Attorney General, the decision of this question is premature. In all events, I do not think that we can regulate the advice an attorney gives to his client, although the advice may be wrong, and although the attorney may be in the office of the Attorney General and the client may be an official of the State. We can, and frequently do, regulate the official conduct not only of State but national officials. But we have no warrant to regulate the advice their attorneys give them. I think the condition we impose upon the State because of the advice its Parole Commission has received from the Commission's attorney is quite as unauthorized as the condition the State trial court imposed upon the prisoners. If the court is of opinion the attorney acted in defiance of the order of the trial court, that matter should be taken care of by way of disciplinary procedure, rather than by the conditional release of two convicted felons.