STATE OF NORTH CAROLINA v. WILLIAM RUSSELL STALLINGS

No. 8411SC1164

(Filed 15 October 1985)

1. **Criminal Law § 73.2— delivery of cocaine—statements made in defendant's presence—admissible**

   There was no error in a prosecution for possession and delivery of cocaine in admitting statements not made by defendant regarding efforts to find cocaine where the testimony was not offered to prove the truth of the matters asserted but to show defendant's knowledge of his companions' plans or to explain subsequent conduct.

2. **Criminal Law § 113— possession and delivery of cocaine—court's summary of evidence—no prejudicial error**

   There was no prejudicial error in the trial court's summary of the evidence in a prosecution for possession of cocaine with intent to sell or deliver, sale or delivery of cocaine and conspiracy to sell or deliver cocaine where the court inaccurately or incompletely summarized the evidence by stating that defendant was introduced to an SBI agent, that a third party told the agent that he and defendant would go get the cocaine and that they would take a cut of the cocaine, and when it failed to summarize the evidence as to defendant's hearing disability and as to the stereo in the mobile home being played loudly. The misstatements or omissions were not so prejudicial as to require a new trial since defendant was convicted only of possession and delivery of cocaine and was acquitted of all other charges; moreover, the court expressly instructed the jurors that they were to consider all the evidence, to rely upon their recollection of the evidence and to disregard any statement by the court which differed from their recollection.

3. **Criminal Law § 142.3— possession and delivery of cocaine—requirement that defendant repay SBI $600 used to buy drugs**

   The trial court did not err by requiring as a condition of a suspended sentence that a defendant convicted of possession and delivery of cocaine pay the $600 expended by the SBI to buy drugs as restitution. Money expended and not recovered by undercover SBI agents making a buy to obtain

evidence necessary to an arrest for illicit drug operations is a particular damage or loss and not part of the agency's normal operating costs. G.S. 15A-1343(d).

Judge JOHNSON dissenting in part and concurring in part.

APPEAL by defendant from *Martin (John C.), Judge*. Judgment entered 14 June 1984 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 23 August 1985.

Defendant was charged in bills of indictment with possession of cocaine with intent to sell or deliver, with sale or delivery of cocaine, and with conspiracy to sell or deliver cocaine. He was convicted of possession and delivery of cocaine and was acquitted of all other charges. He received a three year sentence, which was suspended on condition that, *inter alia*, he serve a six month active term and pay $600 restitution to the State Bureau of Investigation (SBI) Special Drug Fund.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Dennis P. Myers, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Leland Q. Towns, for defendant appellant.*

EAGLES, Judge.

The State's evidence consisted primarily of the testimony of Rod A. Broadwell, a Special Agent with the SBI Broadwell testified that he went with Ray Perry and a confidential informant to a mobile home shared by Rickie Williams and defendant. Upon entering the house with his two companions, Broadwell was introduced to Williams. Broadwell also met defendant. In the living room in the presence of defendant, Broadwell and the confidential informant, Perry asked Williams to get some cocaine. Williams agreed to attempt to get some cocaine. Williams and Broadwell left the mobile home with the intention of obtaining cocaine, but were unsuccessful. Upon returning, Williams called defendant and Broadwell into a rear bedroom, where he told Broadwell to give him $600 and that he and defendant were going to get the cocaine. Williams also told defendant, "I want you to drive, Russell, and if the police stops [sic] us I'll get out and run with the cocaine." Defendant agreed to drive. Williams and defendant returned to the mobile home a short time later. Defendant took a

clear plastic zip lock bag containing a white powder substance, subsequently analyzed as cocaine, from his left coat pocket and handed it to Broadwell.

Defendant testified that he had no conversation with Broadwell; that he did not hear any conversation between Broadwell and Williams; that he had a hearing disability, having had three operations performed on his left ear; that Williams awakened him that night and asked him to drive Williams someplace because Williams was drunk; that Williams, nevertheless, drove the vehicle as defendant went back to sleep in the vehicle; that when they returned to their home, Williams instructed defendant to carry the plastic bag into the house; that he put the bag on the table; and that Broadwell picked up the bag from the table. Defendant's father corroborated defendant's testimony as to his hearing problems.

[1] Defendant first contends that the court erred in admitting Broadwell's testimony as to the following statements made by Perry or Williams: (1) Perry's request to Williams to get some cocaine and Williams' response that he would attempt to get some; (2) Williams' statement to Broadwell as they drove in search of cocaine that he "was going to this house to try to get some cocaine," and (3) Williams' statements in rear bedroom (a) to Broadwell requesting $600 to purchase some cocaine, "that him (Williams) and Russell Stallings (defendant) were going to take (Broadwell's) car and go get it, and . . . that when he got back that he was going to take a toot out of the coke," and (b) to Williams asking defendant to drive "and if the police stops [sic] us I'll get out and run with the cocaine." Defendant contends that the above testimony was inadmissible hearsay. We disagree.

An assertion by any person other than the witness testifying is hearsay and inadmissible only if it is offered for the truth of the matter asserted; if the testimony is offered for a purpose other than proving the truth of the matter asserted, the testimony is admissible. 1 Brandis North Carolina Evidence, sec. 138 (1982). Here the testimony was not offered to prove the truth of the matters asserted, but to show defendant's knowledge of his companions' plans. *State v. Foster*, 293 N.C. 674, 239 S.E. 2d 449 (1977). Defendant's objections to the conversations at trial were grounded upon the failure of the State to lay a foundation as to

whether defendant was present during these conversations. Once the State laid the foundation, defendant did not object to the subsequent admission of the conversations. Although Williams' statement to Broadwell as they rode in search of cocaine was not made in defendant's presence, it nevertheless was admissible to explain Broadwell's subsequent conduct. *State v. Tate*, 307 N.C. 242, 297 S.E. 2d 581 (1982).

[2] Defendant next assigns error to the court's instructions to the jury. He contends the court inaccurately or incompletely summarized the evidence: (1) when it stated Perry introduced both Williams and defendant to Broadwell, when Broadwell testified only that Perry introduced Williams to him; (2) when it stated Williams told Broadwell that he and defendant would go get the cocaine and that "they" would take a cut of the cocaine, when Broadwell testified that Williams said "he" would take a cut of cocaine; and (3) when it failed to summarize the evidence as to defendant's hearing disability and as to the stereo in the mobile home being played loudly. Since there was no objection at trial to the jury instructions, defendant urges us to find "plain error" pursuant to *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), and award him a new trial. We fail to perceive how these misstatements or omissions were so prejudicial as to require a new trial since defendant was convicted only of possession and delivery of cocaine and was acquitted of all other charges, including the conspiracy charge. Moreover, the court expressly instructed the jurors that they were to consider all the evidence, to rely upon their recollection of the evidence, and to disregard any statement by the court which differed from their recollection of the evidence.

[3] We find no merit in defendant's remaining contention that the court erred in requiring defendant to pay $600 expended to buy drugs as restitution to the SBI Special Drug Fund. G.S. 15A-1343(d) provides in pertinent part:

As a condition of probation, a defendant may be required to make restitution or reparation to an aggrieved party or parties who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant. . . . As used herein, "restitution" shall mean compensation for damage or loss as could or-

dinarily be recovered by an aggrieved party in a civil action. . . . As used herein, "aggrieved party" shall include individuals, firms, corporations, associations or other organizations, and government agencies, whether federal, State or local. *Provided, that no government agency shall benefit by way of restitution except for particular damage or loss to it over and above its normal operating costs.* . . . Restitution or reparation measures are ancillary remedies to promote rehabilitation of criminal offenders and to provide for compensation to victims of crime, and shall not be construed to be a fine or other punishment as provided for in the Constitution and laws of this State. (Emphasis added.)

Money expended and not recovered by undercover SBI agents making a buy to obtain evidence necessary to an arrest for illicit drug operations is a "particular damage or loss to it [the SBI]" and not part of the agency's "normal operating costs." G.S. 15A-1343(d). "Normal operating costs" would include the salaries and compensation of agents, acquisition and maintenance of vehicles and other equipment, and office and administrative expenses but not money used by undercover agents to purchase illicit drugs.

We are advertent to the opinion of the Fourth Circuit Court of Appeals in *Evans v. Garrison,* 657 F. 2d 64 (4th Cir. 1981), in which they construed G.S. 15A-1343(d) as not permitting a trial court as a condition of parole to order restitution of $2,500 by each defendant to reimburse the SBI "for the expenses it had incurred in investigating the charges and obtaining the proof which led to the tender of the guilty pleas." *Id.* at 66. We believe that the cases are distinguishable on their facts. Here, the restitution ordered was $600 actually spent to buy the illicit drugs at issue. In *Evans,* the funds in question were general investigation expenses.

In our judgment *Evans* is not sufficiently persuasive to mandate that money spent for drugs in this case not be repaid by the defendant.

For the reasons discussed, in the trial and sentencing here, we find

No error.

Judge PARKER concurs.

Judge JOHNSON concurs in part and dissents in part.

Judge JOHNSON dissenting in part and concurring in part.

I dissent from the majority's conclusion that the $600 ordered as restitution is not part of the SBI's "normal operating costs." The practice of the SBI (division within North Carolina Department of Justice) in making undercover buys of illicit drugs from suspected drug dealers is one of the most effective of several tools regularly used by the Department in its efforts to combat the illegal drug traffic within the State. The use of funds of the Department of Justice by undercover agents to purchase illicit drugs has become such a *continuing* and *ongoing* part of the Justice Department's efforts that the Department includes it as a line item within its general budget request. Since the early 1970's, the North Carolina General Assembly has appropriated funds to the Justice Department on an annual basis for special investigations by undercover agents expending funds to purchase illicit drugs. *See* Records of the North Carolina State Budget Office; Records of the Budget Office of the North Carolina Department of Justice. I believe that funds appropriated and used by undercover agents to purchase illicit drugs have become just as much a part of the "normal operating costs" of the Justice Department as are salaries and compensation of agents, acquisition and maintenance of equipment, and office and administrative expenses.

I agree with the reasoning and interpretation of the Fourth Circuit in *Evans v. Garrison*, 657 F. 2d 64 (1981). The majority seeks to make a distinction where there is no difference.

As to defendant's other assignments of error, I concur with the majority.

For the foregoing reasons, I vote to remand with instructions to modify the judgment by deleting the $600 restitution requirement.