ENOMA UYG IGBINOVIA, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 24071

LEROY ROOSEVELT MACK, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 24312

MICHAEL VERN MENZELLI, JR., APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 24202

May 25, 1995                                              895 P.2d 1304

*Morgan D. Harris,* Public Defender and *Howard S. Brooks,* Deputy Public Defender, Clark County, for Appellants.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney and *James Tufteland,* Deputy District Attorney, Clark County, for Respondents.

## OPINION

By the Court, SHEARING, J.:

These consolidated appeals require us to decide whether district court judges possess the statutory authority to order a person convicted of violating the narcotics laws of this state to reimburse the arresting authorities for the outlay of "buy money," the funds expended by police departments to obtain conclusive evidence of an offender's guilt, either by imposing the requirement as part of the sentence or as a condition of probation.

We hold that the restitution portion of the sentencing statute does not accord the authority to order restitution of "buy money," but that the broader language of the statute allowing for restitution as a condition of probation does accord such authority. We therefore vacate the restitution portion of the sentence imposed upon appellant Enoma Uyg Igbinovia (Igbinovia) and let stand the restitution probation conditions imposed upon appellants Leroy Roosevelt Mack (Mack) and Michael Vern Menzelli, Jr. (Menzelli).

On July 18, 1992, an undercover narcotics officer of the Las Vegas Metropolitan Police Department (Metro) purchased one-

eighth of an ounce of marijuana from Igbinovia for $25. The next day Igbinovia sold the same officer $40 worth of marijuana, and on September 3, 1992, Igbinovia and a co-defendant sold one-quarter of an ounce of cocaine to an undercover Metro officer for $350. Igbinovia was charged with three counts of sale of a controlled substance, and one count of trafficking a controlled substance.

Pursuant to a plea bargain, Igbinovia pleaded guilty to one count of possession of a controlled substance with intent to sell. Igbinovia was thereafter convicted on the single count to which he pleaded guilty. The Department of Parole and Probation, in a pre-sentence report, recommended that Igbinovia be "held accountable" for the $65 spent to purchase the marijuana and one-half of the $350 spent to purchase the cocaine. The department stated that, "Therefore, total restitution owed by the defendant would be $240." The district court judge sentenced Igbinovia to a prison term, and required, as part of his sentence, that he pay $240 in restitution to Metro.

On March 9, 1992, appellant Mack sold 5.3 grams of cocaine to an undercover officer of the North Las Vegas Police Department (the department). He was charged by information with trafficking a controlled substance. Mack pleaded guilty to the lesser charge of possession of a controlled substance with intent to sell, and was sentenced to three years in prison. The judge suspended the sentence in its entirety and placed Mack on probation "for an indeterminate period of time not to exceed five (5) years," with special conditions, including the requirement that Mack pay $400 in restitution to the department.

On August 30, 1990, detective Jimmy Vaccaro (Vaccaro) went to appellant Menzelli's home, where Vaccaro and Menzelli waited until a third man, Ricardo, arrived. Ricardo produced cocaine from his pocket and handed it to Menzelli, whereupon Menzelli turned it over to Vaccaro. Vaccaro asked Ricardo how much he wanted for the cocaine, and Ricardo answered, "Whatever you and Mike [Menzelli] have worked out." Vaccaro then paid $340 to Menzelli, who handed the money to Ricardo. Vaccaro left the premises without arresting either man. Menzelli was arrested later and charged with trafficking a controlled substance.

Menzelli pleaded guilty to a reduced charge of possession of a controlled substance, and was sentenced to three years in prison. The district court judge suspended the sentence in its entirety and placed Menzelli on probation "for an indeterminate period not to exceed four (4) years." As one of several special conditions of probation, Menzelli was ordered to pay $170 restitution during the first year of probation, representing one-half of the "buy

money" spent to purchase the cocaine. Each of the appellants now contest the restitution orders.

We first address appellant Igbinovia's claim—that the district judge who sentenced him lacked statutory authority to order him, as a part of his sentence, to pay restitution to Metro for the money Metro expended in buying marijuana and cocaine from him. The statutory basis in Nevada for ordering restitution as part of a sentence is NRS 176.033, which provides, in relevant part:

> **Sentence of imprisonment required or permitted by statute: Definite period; restitution; modification of sentence.**
> 1. If a sentence of imprisonment is required or permitted by statute, the court shall:
> (a) Sentence the defendant to imprisonment for a definite period of time . . . ; and
> (b) If restitution is appropriate, set an amount of restitution *for each victim of the offense* and for expenses related to extradition . . . .

(Emphasis added.) The precise question, then, is whether Metro is a "victim" within the meaning of NRS 176.033.

The legislature did not define "victim" in NRS 176.033 or elsewhere in the statutory scheme within which the provision falls. The legislature has defined "victim" in a wholly separate provision of the Nevada Revised Statutes. *See* NRS 213.005. That statute provides, in relevant part:

> As used in NRS 213.010 to 213.100 [a subsection of the "Pardons and Paroles" chapter of the NRS], inclusive, unless the context otherwise requires:
> 2. "Victim" includes:
> (a) A person against whom a crime has been committed;
> (b) A person who has been injured or killed as a direct result of the commission of a crime; or
> (c) The surviving spouse, parents or children of such a person.

In enacting NRS 176.033, the legislature did not cross-reference the definition of "victim" found in NRS 213.005, although it could have;[1] as a result, the legislature did not incor-

---

[1] We note that the legislature did cross-reference the statutory definition of "victim" found in NRS 213.005 when it enacted NRS 176.015, which allows for "victim-impact" testimony before a convicted criminal defendant is sentenced. The definition has therefore been incorporated into NRS 176.015, for purposes of determining which "victim-impact" testimony is permissible.

porate the definition into the sentencing statute. We are therefore left to interpret the word "victim" within the policy of the sentencing statute and to discern whether the legislature envisioned that police departments which expend money to obtain evidence are "victims" within the meaning of the sentencing statute.

We find it useful to look to other state court decisions that have directly considered this issue. The overwhelming number of these courts have determined that police departments are not "victims" within the meaning of sentencing statutes allowing restitution to "victims of the offense" for which a defendant has been convicted. *See, e.g.*, People v. Chaney, 544 N.E.2d 90, 91 (Ill. App. Ct. 1989); People v. Evans, 461 N.E.2d 634, 639 (Ill. App. Ct. 1984); People v. Woods, 576 N.Y.S.2d 611, 612 (App. Div. 1991) (superseded by statute specifically allowing for restitution of "buy money" to law enforcement agencies); People v. Rowe, 544 N.Y.S.2d 97, 98-99 (App. Div. 1989) (same); State v. Evans, 512 N.W.2d 259, 261 (Wis. Ct. App. 1994); *see also* U.S. v. Meacham, Nos. 93-1692, 93-1768, 1994 WL 259208 (6th Cir. June 15, 1994).

In *Chaney,* 544 N.E.2d at 91, the court noted that "where public money is expended in pursuit of solving crimes, the expenditure is part of the investigating agency's normal operating costs and the agency is not considered a 'victim' for purposes of restitution." In *Evans* (Wisconsin), 512 N.W.2d at 261, the Wisconsin Court of Appeals found that the state was not a "victim" under its sentencing statute and it distinguished and left intact its prior holding that restitution of "buy money" is only appropriate as a condition of probation unless and until the legislature specifically directs otherwise. The same court had earlier stated that "[f]or reasons we believe too obvious to recite, we disagree with [defendant] that sale of narcotics is a 'victimless crime.' *Society* may be no less a victim of this type of criminal conduct than an individual who may be more directly harmed." State v. Connelly, 421 N.W.2d 859, 861 (Wis. Ct. App. 1988) (emphasis added). Although the court acknowledged its earlier statement, it nevertheless held that the "victim" in an arranged drug buy is not the police department. 512 N.W. at 260-61.

In *Evans* (Illinois), 461 N.E.2d at 639, the court held that the government will not be considered a "victim" to the extent that public monies—which represent a normal operating cost—are expended to collect evidence of crime. The court specifically stated:

> While certainly we would be remiss were we to hold that unlawful delivery is a victimless crime, we would be blinking reality were we not to acknowledge that many, if not

most, offenders are brought to justice through the efforts of undercover agents making buys with public monies. We will not, however, strain the commonly accepted understanding of the word "victim" so as to include the public drug enforcement agency . . . in the case before us. Where public monies are expended in the pursuit of solving crimes, the expenditure is part of the investigating agency's normal operating costs. The governmental entity conducting an investigation is not therefore considered a "victim" to the extent that public monies are so expended.

*Id.* (citing Evans v. Garrison, 657 F.2d 64 (4th Cir. 1981) (wherein appellate court vacated restitution requirement imposed by trial judge that, if unpaid, limited defendant's parole eligibility)).

In *Meacham,* 1994 WL 259208 at *3, the court held that restitution may not be awarded as part of a sentence under the federal Victim and Witness Protection Act (VWPA) because the government was not a "victim" within the meaning of the VWPA. The court emphasized that when restitution is ordered as part of a sentence, its aim is "to protect victims, not to safeguard the government's financial interest in funds used as bait to apprehend offenders." *Id.* The court also pointed out that "investigative costs are not losses, but voluntary expenditures by the government for the procurement of evidence" which may not form the basis for a restitution award because the costs are "not a direct loss resulting from the defendant's illegal conduct." *Id.*

Finally, in U.S. v. Gibbens, No. 93-2203, 1994 WL 220364 *1, *7 (1st Cir. June 1, 1994), the court held that the government was not a "victim" for purposes of the VWPA and could not be awarded restitution thereunder. In *Gibbens* the Department of Agriculture had sold food stamps in an undercover operation at a deep discount to the defendant, and as part of the defendant's sentence the federal district court judge ordered restitution to the government for its loss, which it computed as the difference between the face value paid out when the stamps were tendered by retailers and the price for which the undercover agents had sold the stamps. *Id.* at *2. In vacating that portion of the sentence, the appellate court stated:

It defies common usage to envision an entity that planned and provoked a crime as a victim in the same sense that a passive sufferer of harm is a victim, notwithstanding that the entity may have experienced loss.

*Id.* at *6. The court again emphasized that the word "victim" has common notions of passivity when it stated that "[a] victim is commonly considered to be a passive sufferer of harm, that is,

someone who is 'tricked, duped, or subjected to hardship. . . .'." *Id.* (quoting Webster's Third New International Dictionary 2550 (1981)).

We are persuaded that the word "victim" has commonly-understood notions of passivity, where the harm or loss suffered is generally unexpected and occurs without the voluntary participation of the person suffering the harm or loss. Although it is not without any foundation in logic that the government might fall under the wording of subsection 2(b) of NRS 213.005 (defining "victim" as one "who has been injured . . . as a direct result of the commission of a crime"), it is a stretch for this court to hold, without incorporation of that provision into the sentencing statute and without more clearly defined markers indicating such a result, that it is appropriate to conclude that a police department that expends money to secure evidence is a "victim" of crime.

Research has uncovered very few decisions holding that police departments are "victims" within the meaning of sentencing statutes allowing restitution "to victims." Therefore, very few courts have held that police departments are entitled, as a part of a defendant's criminal sentence, to receive restitution of "buy money" from a criminal defendant who took the money in a drug transaction and was later convicted of a crime for engaging in that transaction. *See* State v. Pettit, 698 P.2d 1049, 1050-51 (Or. Ct. App. 1985).[2] In *Pettit,* the court's holding that restitution to a police department was proper turned on the interpretation of a broadly worded statute. The *Pettit* court found that a police department was a "victim" under a statute that defined "victim" as *"any person* whom the court determines *has suffered pecu-*

---

[2]U.S. v. Gibbens, No. 93-2203, 1994 WL 220364 *1, *9 (1st Cir. June 1, 1994), listed several state court decisions for its claim that "[c]ourts interpreting analogous state statutes [to the VWPA] have divided on this type of question." The author of *Gibbens,* however, failed to note that some of the decisions it cited for the proposition that courts have held police departments to be "victims" actually involved scenarios in which the restitution order was a condition of probation and not a part of the sentence (State v. Stallings, 342 S.E.2d 519 (1986)) or involved statutes that specifically provided for "restitution to any law enforcement agency for reasonable expenditures made in the purchase of any controlled substances from such person . . . as part of the investigation leading to such conviction" (State v. Rios, 465 N.W.2d 611, 613 (1991)). In State v. Hernandez, 822 P.2d 1011 (Idaho 1991), also cited in *Gibbens,* the decision turned on a statute that allowed, as part of a sentence, restitution for "costs incurred by law enforcement agencies in investigation of the violation for which the defendant is convicted." Thus, the question in many of the cited cases was not whether the government was a "victim" within the meaning of sentencing statutes, but rather whether in the final analysis restitution was appropriate. 822 P.2d at 1014.

*niary damages* as a result of defendant's criminal activities." 698 P.2d at 1051 (emphasis added).

Although the definition of "victim" in *Pettit* is one of several reasonable interpretations, we note that it was expressly provided for as a statutory definition. In addition, the court failed to address the primary issue that has concerned other courts—the fact that the police departments have actively and voluntarily participated in the conduct and are not passive recipients of harm or loss as the term "victim" commonly connotes.

In the absence of clear legislative markers leading us to such a broad definition, we cannot simply choose a definition of "victim" such as that in *Pettit* as the appropriate measure in this case. In light of the well-reasoned decisions cited above, which discussed the "passivity" element of victim status and noted the active role played by police departments in securing evidence as a normal operating expense, we cannot choose the construction which ignores these factors in favor of police departments who expend money to obtain evidence leading to conviction. We therefore vacate the restitution portion of Igbinovia's sentence.

In light of the above, we need not address the fact that the district court judge overlooked that, even were he authorized to order restitution to Metro under this statute, he would still be authorized to order restitution to Metro only for the particular offense to which Igbinovia had pleaded guilty. *See* Erickson v. State, 107 Nev. 864, 866, 821 P.2d 1042, 1043 (1991) (holding that restitution may be ordered only in relation to an offense that a defendant has admitted, upon which he has been convicted, or for which he has agreed to pay restitution); Buffington v. State, 110 Nev. 124, 127, 868 P.2d 643, 645 (1994) (same). The state's request that Igbinovia be "held accountable" for the amounts expended in transactions for which he was not convicted was thus amiss in any event.

We next address the claims of Mack and Menzelli that the district court judges who ordered that they pay restitution as conditions of probation erred. The power to impose conditions on probation must be authorized by the legislature. Nev. Const. art. 5, § 14; Van Dorn v. Warden, 93 Nev. 524, 525-26, 569 P.2d 938, 939 (1977). However, a district court judge enjoys wide discretion under grants of authority to impose such conditions. Creps v. State, 94 Nev. 351, 360, 581 P.2d 842, 848 (1978).

The general statutory grant of authority to fashion and impose probation conditions in Nevada is broad. NRS 176.185 provides, in relevant part:

> **Suspension of execution of sentence by court . . . .**
>
> 1.   Whenever any person has been found guilty in a district court of a crime . . . the court [except in certain enumerated crimes] may by its order suspend the execution of the sentence imposed and grant probation to the convicted person *as the judge thereof deems advisable.*

(Emphasis added.) NRS 176.1853 also provides, in relevant part:

> **Terms and conditions of probation . . .**
>
> 1.   In issuing an order granting probation, *the court may fix the terms and conditions thereof,* including a requirement for restitution . . . .

(Emphasis added.) Finally, NRS 176.205 provides, in relevant part that, "By order duly entered, the court may impose . . . *any* condition of probation or suspension of sentence." (Emphasis added.) These three emphasized provisions have been held to accord to district court judges a broad power to impose conditions of probation. *See Creps,* 94 Nev. at 360, 581 P.2d at 848 (court was authorized to order short-term incarceration in county jail as condition of probation, even absent express statutory authority). Thus, were these the only statutes the district judges had at their disposal, an order of restitution in the instant cases would have been permissible under these statutes alone.

In the instant case, however, a more particular statute also applies. NRS 176.189 provides, in relevant part:

> **Restitution as condition of probation or suspension of sentence.**
>
> 1.   The court shall order as a condition of probation or suspension of sentence, in appropriate circumstances, *that the defendant make full or partial restitution to the person or persons named in the order,* at the times and in the amounts specified in the order unless the court finds that restitution is impracticable. Such an order may require payments for medical or psychological treatment of any person whom the defendant has injured.
>
> 2.   All money received by the division for restitution for:
>
> (a) One victim may; and
>
> (b) More than one victim must,
>
> be deposited with the state treasurer for credit to the restitution trust fund. All payments from the fund must be paid as other claims against the state are paid.[3]

---

[3]This court has stated previously, in dicta, that NRS 176.189(1) was "directed to the restoration of money or property to the victim of the offense of which the defendant is found guilty." *See* Korby v. State, 93 Nev. 326,

(Emphasis added.) In this statute, the legislature chose to accord broad authority to the district court judge to order restitution not only to "victims," but to any "person or persons named in the order."[4] The legislature also authorized restitution for medical and psychological treatment, not to "victims," but to *"any person* whom the defendant has injured."[5] Thus, the claims of Mack and Menzelli that the government must be shown to have been a

---

327, 565 P.2d 1006, 1006 (1977). This court did not cite precedent, legislative history or authority from other jurisdictions.

The issue before this court in *Korby* was whether the district court judge possessed the authority to order that the defendant pay the costs of a trial in which the jury was unable to reach a verdict, when the same defendant later entered a guilty plea on a reduced charge to avoid retrial. The judge attempted to impose the restitution order as a condition of probation on the reduced charge to which the defendant had pleaded guilty. This court noted that "[i]t is evident that [NRS 176.189(1)] bears [no] relevance to the issue before us." *Id.* The court ultimately held, in *Korby,* that a defendant simply cannot be made to pay for the expenses of a trial at which he was not convicted. *Id.*

[4]We have not overlooked the fact that the legislature used the word "victim" in subsection two of the statute. *See* NRS 176.189(2). That provision authorizes the judge, if the "person . . . named in the order" is a "victim," to order that the restitution sum be deposited with the state treasurer for credit to the restitution fund. That provision also *requires* the judge, if the order provides for restitution to more than one victim, to order that the sum be deposited with the state treasurer for credit to the restitution fund. This provision is not inconsistent with subsection one of the statute, which allows for restitution to a class of persons larger than those possessing "victim" status. *See* 176.189(1). Subsection two simply provides that if the "person or persons named in the order" have "victim" status, then the judge may or must follow a particular procedure for providing for disbursement of the restitution sum. We conclude that paragraph two speaks only to the procedure for disbursing to victims the restitution funds ordered and that it does not limit the class of persons to whom restitution may properly be ordered. A similar result was reached in State v. Connelly, 421 N.W.2d 859, 861 (Wis. Ct. App. 1988), a case in which that court interpreted a provision very similar to ours.

In *Connelly,* the court wrote:

> Connelly reads [the relevant provision] too restrictively. The statute does not state that the only time a probationer can be required to pay out funds as a consequence of his or her criminal activity is to provide restitution to a crime victim. It simply requires that if there is an ascertainable victim, he or she must be compensated under the guidelines therein stated.

421 N.W.2d at 861. The court then noted that the adoption of the mandatory victim restitution provisions did not abridge the statutory authority already reposed in the trial judge to order conditions on probation that were authorized under other portions of the statutory scheme. *Id.*

[5]Although we realize that the restitution of drug "buy money" is not an expense for medical or psychological treatment, we cite this provision to demonstrate that the legislature specifically did not require that the person to whom restitution may be ordered as a condition of probation have "victim" status.

"victim" must fail, as the statute does not require such a predicate fact.

It has been noted that the statutory provisions of the probation scheme must be strictly construed. *See, e.g., Van Dorn*, 93 Nev. at 526, 569 P.2d at 939. This principle, however, has been applied only to limit a district court judge to a particular statutory framework in making probation decisions. If a particular framework is included in the statutory probation scheme, the judge is not free to go outside that framework and exercise discretion under the general grant of authority. *See id.* In *Van Dorn,* this court noted that the Nevada Legislature had "carefully specified those instances in which credit may be given toward a prison term," and held that the district court judge did not err in rejecting the defendant's claim for credit for time allegedly served that would have fallen outside the statutory framework. *Id.*

As noted, the legislature has provided a framework for imposing restitution as a condition of probation; we hold that the district judges in the instant cases did not go outside the relevant provision. The district judges' orders were authorized by NRS 176.189, and they did not rely on their general authority to order restitution in a manner that would not also have been authorized by NRS 176.189. In addition, NRS 176.189 necessarily vests discretion in a district judge, "in appropriate circumstances," to determine which "person or persons" are entitled to restitution. Discretionary powers of the district court accorded by a statutory grant of authority must be interpreted liberally. *See Creps,* 94 Nev. at 360, 581 P.2d at 848 ("the particularly ameliorative nature of probation statutes compels a liberal interpretation of the *discretionary powers* conferred on the district courts") (emphasis added). Accordingly, we conclude that the district court judges properly awarded restitution as conditions of probation in the instant cases.

We note that our conclusion is in line with the conclusions of a substantial number of other state courts that have interpreted their state probation condition provisions to allow the restitution of drug "buy money" to police departments. *See, e.g.,* Schwing v. State, 633 P.2d 311, 313-14 (Alaska Ct. App. 1981) (allowing restitution as a condition of probation to "aggrieved parties"); State v. Zaruba, 306 N.W.2d 772, 775 (Iowa 1981) (allowing restitution only in relation to offenses for which defendant was actually convicted); State v. Stallings, 342 S.E.2d 519, 521 (N.C. 1986); State v. Connelly, 421 N.W.2d 859, 861 (Wis. Ct.

App. 1988) (restitution of drug money was authorized under statute allowing for "reasonable and appropriate" conditions of probation).[6]

In conclusion, we vacate the portion of appellant Igbinovia's sentence requiring restitution, because the government is not a "victim of the offense" within the meaning of the sentencing statute authorizing restitution to victims. We let stand, however, the conditions of probation imposed on appellants Mack and Menzelli that require that restitution be made to the appropriate government agencies, as such an order is authorized by the broader language of the probation statutes.

YOUNG, SPRINGER, and ROSE, JJ., concur.

STEFFEN, C. J., concurring in part and dissenting in part:

I concur in the majority's rulings in the *Mack* and *Menzelli* cases recognizing the right of a sentencing court to require the restitution of drug "buy money" expended by police agents, as a condition of probation. I dissent from the majority's ruling in *Igbinovia* reversing the district court's imposition of restitution of drug buy money to the police department as part of Igbinovia's sentence. In accordance with the foregoing, further comments in this dissent will relate strictly to the *Igbinovia* case.

If I were to place a label on this case, it would be the "Straining at a Gnat and Swallowing a Camel" case. It is, I suggest, a paradigm which could have inspired the Chinese Proverb "[g]oing to law is losing a cow for the sake of a cat," and could have prompted Macklin to opine that "[t]he law is a sort of hocus-pocus science that smiles in your face while it picks your pocket; and the glorious uncertainty of it is of more use to the professors than the justice of it."

---

[6]We have discovered only one case in which an appellate court vacated the imposition by a trial court—as a condition of probation (actually "supervised release")—a requirement that the defendant pay restitution for drug "buy money." *See* U.S. v. Gall, 21 F.3d 107, 111 (9th Cir. 1994). There is, however, a disagreement among federal circuits on this issue, and we note that the issue has not yet been addressed by the United States Supreme Court. *See* U.S. v. Daddato, 996 F.2d 903, 906 (7th Cir. 1993).

In *Daddato,* Judge Posner, writing for the panel, relied on a "catch-all" provision of the federal supervised release statute to sanction the practice, and he noted that the defendant was not sentenced under the Victim and Witness Protection Act (VWPA), but under the supervised-release statute, which Posner considered independent from the VWPA. The Sixth Circuit panel that wrote *Gall* considered the VWPA to have been incorporated into the supervised release statute by reference. *See Gall,* 21 F.3d at 111.

Above all, this split emphasizes that resolution of this issue is a matter of statutory interpretation. Nevada's statute is significantly more straightforward and comprehensible than the federal statute at issue in the reported federal cases. As a result, the federal cases are helpful but not persuasive.

In citing the above quotations, I mean no disrespect for my colleagues in the majority or the other courts who have engaged in the art of analytical jurisprudence in which they have been trained. Indeed, both lawyers and judges are attuned to careful distinctions, semantical exercises, and sophisticated interpretations. Unfortunately, we frequently do so at the expense of reason and good common sense. Coke has said that "[r]eason is the life of the law; nay, the common law itself is nothing else but reason." Finally, Hill has stated that "[l]aw that shocks equity is reason's murder."

Before joining the world of semantics and addressing the accepted meaning of the word "victim" in response to my colleagues in the majority, I am unable to resist a few additional generalities that are, I suggest, endowed with reason and common sense. Our federal, state, and local governments in this republic are all governments "of the people, by the people and for the people." Our law enforcement agencies are part of government and, by extension, part of the people for whose benefit government exists and by whom the government is financially supported. Moreover, I submit as an irrefutable truth that when those who prey on society by selling illicit drugs can be apprehended only through the undercover use of "buy money," and the criminals from whom the drugs are "purchased" are permitted to keep the money, all honest, taxpaying citizens are victims. Indeed, our taxpayers are victims in at least two ways: the loss of their money, and being forced by the courts to permit the seller of the drugs to profit from the transaction. In the latter sense, the taxpayers are actually coerced into subsidizing the criminal purveyors of drugs! Moreover, the law itself is a victim, for it is forced to forfeit the well-established principle of law that a wrongdoer will not be allowed to profit from his or her own wrongdoing. I seriously doubt that any of the honest citizens of our state would agree that it is either just or reasonable that persons engaged in selling illicit drugs should be allowed to keep money provided by police officers in order to secure their arrest and conviction. If Coke is right in suggesting that the life of the law is reason and that the common law is nothing but reason, then it appears that both have been undermined by today's decision.

Since reason and justice are obviously an insufficient basis for addressing what appears to me to be a rather simple issue, I will engage my colleagues in the world of semantics and judicial precedent that have led them to believe that the law prevents the district court from ordering Igbinovia to restore the taxpayers' funds to the police department as part of his sentence.

Citing NRS 176.033,[1] the majority frame the issue as "whether Metro [Las Vegas Metropolitan Police Department] is a 'victim' within the meaning of NRS 176.033." Noting that the Legislature has provided no definition of the term "victim" in the referenced statute, the majority assumes the challenge of interpreting the meaning of the term, the policy behind it, and whether the Legislature "envisioned that police departments who expend money to obtain evidence are 'victims'" within the intendment of the statute. The majority undertakes the task by looking to other jurisdictions, observing that the "overwhelming majority" of the courts considering the issue have held that the police who have parted with "buy money" in order to apprehend criminals are not "victims."

In citing to cases from other jurisdictions, the majority relies primarily on cases that have held that investigatory agencies are not victims when they expend public funds as part of their normal operating costs. *See* U.S. v. Meacham, 27 F.3d 214 (6th Cir. 1994); People v. Chaney, 544 N.E.2d 90 (Ill. App. Ct. 1984); People v. Evans, 461 N.E.2d 634 (Ill. App. Ct. 1984); State v. Evans, 512 N.W.2d 259 (Wis. Ct. App. 1994). In *Chaney,* the court relied solely on *People v. Evans* for its ruling. *Chaney,* 544 N.E.2d at 91. In turn, *People v. Evans* relied exclusively on Evans v. Garrison, 657 F.2d 64 (4th Cir. 1981) as authority for holding that "[t]he government entity conducting an investigation is not . . . considered a victim to the extent that public monies are expended [in the pursuit of solving crimes]." *People v. Evans,* 461 N.E.2d at 639. Thus, albeit indirectly, the majority in the instant case, and the courts in *Chaney* and *People v. Evans* all rely on *Garrison* as support for their rulings.

Reliance upon *Garrison* is misplaced, however, because the ruling did not involve drug "buy money," but rather reimbursing the drug division for the expenses it incurred in investigating charges and obtaining proof which led to guilty pleas. *Garrison,* 657 F.2d at 66. Equally important, the *Garrison* court was dealing with a North Carolina statute that expressly provided that "no government agency shall benefit by way of restitution . . .

---

[1] In pertinent part, NRS 176.033 provides:

**Sentence of imprisonment required or permitted by statute: Definite period; restitution; modification of sentence.**

1. If a sentence of imprisonment is required or permitted by statute, the court shall:

(a) Sentence the defendant to imprisonment for a definite period of time . . . ; and

(b) If restitution is appropriate, set an amount of restitution for each victim of the offense and for expenses related to extradition . . . .

except for particular damage or loss to it over and above its normal operating costs." N.C. Gen. Stat. § 15A-1343(d) (1943).

Neither the majority nor the cases cited by the majority attempt to distinguish between "expenses incurred in investigating charges" implicated in *Garrison,* and the "buy money" involved in the instant case. A major distinction between mere operating costs and "buy money" is that the criminal does not profit from the former. A police officer in Durham, North Carolina, stated the obvious on the point when he said:

> In the days of moonshine investigations, the sheriff would go out and buy a little liquor, arrest the buy right then and get his money back. But if you do that with drugs, you only end up with the little guy, not the big distributors . . . . And with cocaine costing about $3,000 an ounce, we may put out $40,000 before we even make an arrest.

*Legislator Wants Seized Property to Aid Law Enforcement Agencies,* Durham Morning Herald, July 6, 1985, at 6A.

Since *Garrison* did not refer to "buy money," it is likely that the reference to "normal operating costs" included only the ordinary expenses such as lab costs, salaries, and normal investigative costs. In any event, "buy money" is in a special category because absent the right to require restitution, the state is actually providing a source of profit for those it arrests. In a very real sense, the taxpayers' money would be "seed money" for further criminal activity against the taxpayers and their children. Thus, both the police department, which is merely an extension of government by and of the people, and the citizens themselves are victims not only through losing the money paid to the criminals and having to replace it with more tax dollars, but also in having the taxpayers' money retained by criminals as a matter of right, thereby subsidizing their capacity to further injure society.

Moreover, there is irony in the majority rejecting for statutory reasons, several of the cases that are in opposition to its ruling, while embracing *Chaney* and *People v. Evans,* which derive their holdings from the statute-based ruling of *Garrison.* Thus, the majority fails to differentiate between a statute exempting "normal operating costs" from restitutory eligibility, and NRS 176.033, which contains no constraints on restitution other than that which is "appropriate." Clearly, "buy money" is not a normal operating cost because, left in the hands of the criminals, it becomes a source of promoting crime rather than deterring it.

I find it both interesting and appalling that the majority reaches for a definition of "victim" that rewards the criminal and punishes the taxpayers who furnish the "buy money" to our law enforcement agencies. Equally troubling, the majority finds per-

suasive the "commonly-understood notions of passivity" attached to the word "victim," "where the harm or loss suffered is generally unexpected and occurs without the voluntary participation of the person suffering the harm or loss." Where does this "commonly understood" notion of "passivity" come from? I suggest that a search of dictionary definitions of the term reveals a far more expansive connotation of the term than one who passively suffers harm inflicted by another. A victim who is defrauded into parting with his or her money actively participates, albeit unwittingly, in the loss of his or her funds. One who is provoked into a fight may nevertheless become the victim of the other's violence despite being a participant in the fray. In short, I find little basis in reason or human experience to limit the term "victim" to those who suffer loss or injury "passively."

More to the point, since Metro was merely an extension of the people who provided the "buy money," there would be a combination of passivity (in the unaware taxpayer-victims whose money was being used) and the more active participation of the police in providing the means for the criminal to commit a monitored crime. Moreover, it defies reason to assume that the police are engaging in undercover operations involving "buy money" with the expectancy that the money somehow lawfully becomes the property of the criminals and will therefore not be the subject of an order of restitution upon conviction and sentencing. Can it seriously be argued that it is a normal operating cost for taxpayers to have *their* "buy money" consumed for the simultaneous punishment and financial benefit of the criminals the money is used to apprehend and bring to justice? The majority quotes from U.S. v. Gibbens, 25 F.3d 28 (1st Cir. 1994), a case where an enlightened federal district court judge was reversed for ordering restitution as part of the sentence imposed on a criminal defendant engaged in the criminal misuse of food stamps. As quoted by the majority, the *Gibbens* court stated that "[i]t defies common usage to envision an entity that planned and provoked a crime as a victim in the same sense that a passive sufferer of harm is a victim, notwithstanding that the entity may have experienced loss." *Gibbens,* 25 F.3d at 34. With due respect to the majority and the *Gibbens* court, I find the quoted material substantially lacking in insight and common sense, at least to the extent that it could be applied to a convicted drug dealer's right to retain the public's "buy money."

In the first place, if the "entity" actually planned and provoked the crime, I suppose the entity itself should have been prosecuted. It seems clear, however, that the "entity" merely provided the means for the criminal to engage in what he thought would be a profitable continuation of his criminal enterprise.

Nevertheless, because the police agency lost its funds in apprehending a criminal rather than in passively having its pockets picked, it apparently was not deemed to be a "passive" victim deserving of restitution, despite the fact that the loss would have been identical in either case. If the "buy money" or the food stamps were stolen from the police station, then, presumably, the loss would be sufficiently passive to warrant a sentence of restitution on the part of the thief.

Fortunately, other courts without benefit of legislative definition have viewed the meaning of the word "victim" in a more reasonable light. In People v. Narron, 192 Cal. App. 3d 724 (Ct. App. 1987), the court held that the county could require restitution for expenses incurred in disposing of controlled substances and dangerous chemicals discovered in the defendant's residence. The *Narron* court considered the county a "victim" because the "policies of [the statute] favor a definition which includes the government where it suffered loss flowing from a defendant's criminal conduct." *Id.* at 731. The court in State v. Topping, 590 A.2d 252 (N.J. Super. Ct. App. Div. 1991) also considered the meaning of the term "victim" without benefit of legislative guidance. In imposing a sentence of restitution to reimburse the county for "buy money," the court interpreted the statutory use of the term "victim" to include those who suffer losses as the direct result of a criminal offense. *Id.* at 254. Under either *Narron* or *Topping,* Metro would appropriately qualify for restitution of its "buy money" as a victim within the intendment of our statute.

Perhaps most perplexing of all, the majority purports to interpret the meaning of the term "victim" in accordance with the public policy underlying NRS 176.033. My review of the majority opinion has failed to reveal any semblance of consideration for or deference to public policy. I suggest that they would be hardpressed to do so. Does anyone seriously think that legislators, representing their respective constituencies, would expect public approval of a policy that would apply tax revenues to the financial benefit of criminals by allowing them to keep "buy money" that happened to be used in effectuating their arrest?

In State v. Connelly, 421 N.W.2d 859 (Wis. Ct. App. 1988), the court considered whether a convicted drug dealer should be required, as a condition of probation, to provide restitution to the police department for the "buy money" he had received. Concluding that restitution was appropriate, the court stated that "[s]ociety may be no less a victim of this type of criminal conduct than an individual who may be more directly harmed." *Id.* at 861. Similarly, in People v. Richards, 552 P.2d 97, 100-01 (Cal. 1976), the court observed that restitution "may serve the

statutory purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole." Finally, in *Narron,* the court noted that restitution ensures "that amends . . . be made to society for the breach of the law." *Narron,* 192 Cal. App. 3d at 726.

With due respect for my colleagues in the majority, I fail to understand how their interpretation in favor of public immolation advances any worthy or decent cause or policy. They supply a meaning to "victim" that enriches criminals at the expense of the taxpayers, and actually provides the convicted drug dealers with added resources to further prey on our citizens and their children. To compound the injury, they force the taxpayer to underwrite the drug industry in every case where "buy money" is used to effectuate an arrest and a prison sentence is imposed. In attempting to divine a reason—any reason—for such a ruling, the only one that surfaces is the absurdity that perhaps it lessens the sting of the criminal's incarceration, also at the taxpayer's expense.

Finding no reason to support the majority's ruling concerning Igbinovia, I respectfully dissent with the fervent hope that the Legislature will fill the void in the common law that this court has failed to resolve or recognize.[2]

---

[2]I note in passing my agreement with the majority's conclusion that Igbinovia may not be required to pay restitution for offenses concerning which he has neither pleaded guilty, nor been found guilty, nor despite the lack of conviction, has otherwise agreed to provide restitution.