2012 COA 159

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joseph L. JUANDA, Defendant–Appellant.**

**No. 11CA1226.**

Colorado Court of Appeals, Division I.

Sept. 27, 2012.

John W. Suthers, Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

¶ 1 Joseph L. Juanda appeals from an order requiring him to pay restitution. We affirm.

### I. Background

¶ 2 On four occasions, Juanda sold oxycodone to an undercover agent of the Drug Enforcement Administration (DEA). Juanda pled guilty to two drug offenses—one felony and one misdemeanor.[1] He was sentenced to probation for the felony and six months in jail for the misdemeanor.

¶ 3 Later, the People sought an order of restitution. They requested that Juanda be ordered to return the "buy money" ($11,600) that he had received from the DEA's agent.

¶ 4 Juanda objected. He argued that the People's request was improper because (1) the DEA was not a victim of his criminal conduct, and (2) recovery of buy money is not expressly authorized by the restitution statute.

¶ 5 The district court rejected Juanda's arguments. It noted that government agencies can recover restitution, and it ruled that the DEA's buy money was recoverable because it qualified as "money advanced by [a] law enforcement agenc[y]," within the meaning of section 18–1.3–602(3)(a), C.R.S.2012. Accordingly, the court ordered Juanda to pay $11,600 in restitution.

### II. Discussion

¶ 6 Juanda contends that the court erred in ordering him to pay restitution. We review de novo, *see Dubois v. People,* 211 P.3d 41, 43 (Colo.2009), and see no error.

¶ 7 "Restitution" means "any pecuniary loss suffered by a victim." § 18–1.3–602(3)(a). As pertinent here, qualifying pecuniary losses include (1) "money advanced by law enforcement agencies," and (2) "extraordinary direct public ... investigative costs." § 18–1.3–602(3)(a)–(b), C.R.S.2012.

¶ 8 Like the trial court, we conclude that the DEA's buy money qualifies as "money advanced by [a] law enforcement agenc[y]" under section 18–1.3–602(3)(a). The money was advanced by the DEA to its undercover agent, who then used the money to buy drugs from Juanda. Although buy money is often recovered immediately (following the arrest of the dealer), here it was not. We think that this loss is recoverable now. *Cf. Gonzales v. State,* 608 P.2d 23, 26 (Alaska 1980) (under probation statute that authorizes restitution for "loss caused by the crime," court could order defendant to repay

---

1. The felony was distribution of a schedule II controlled substance. *See* § 18–18–405(1), (2)(a)(I) C.R.S.2012. The misdemeanor was possession with intent to distribute a schedule V controlled substance. *See* § 18–18–405(1), (2)(a)(IV)(A), C.R.S.2012.

the buy money wrongfully obtained in drug sales to undercover agents).

¶ 9 We further conclude that the buy money constitutes an "extraordinary direct public ... investigative cost[ ]" under section 18–1.3–602(3)(b). Although undercover drug transactions are common, we think that buy money is an extraordinary cost because it is surrendered, not to those who provide goods and services, but to the criminal offender:

> The loss of buy money is qualitatively unlike the expenditure of other money related to a criminal investigation, because it results directly from the crime itself; that is, the money is lost when it is exchanged for the controlled substance. The payment of salaries and overtime pay to the investigators, the purchase of surveillance equipment, the purchase and maintenance of vehicles, and other similar expenditures are "costs of investigation" unrelated to a particular defendant's criminal transaction. These expenditures would occur whether or not a particular defendant was found to be engaged in the sale of controlled substances.

*People v. Crigler,* 244 Mich.App. 420, 625 N.W.2d 424, 428 (2001).

¶ 10 Juanda argues that the buy money cannot be recovered because the DEA is not a "victim," under the restitution statute. We reject this argument.

¶ 11 The restitution statute defines "victim" as "any person aggrieved by the conduct of an offender." § 18–1.3–602(4)(a), C.R.S.2012. According to the supreme court, a government agency is "aggrieved," as that term is normally understood, if it has "been harmed by an infringement of legal rights." *People v. Padilla–Lopez,* 2012 CO 49, ¶ 16, 279 P.3d 651 (quoting *Black's Law Dictionary* 77 (9th ed. 2009)).

¶ 12 Here, there is good reason to think that the DEA has been aggrieved and should recover:

1. The DEA has suffered a loss of $11,600. *Cf. Gonzales,* 608 P.2d at 26.
2. The DEA's loss is the sort of infringement that could support a civil action for damages. *See State v. Pettit,* 73 Or.App. 510, 698 P.2d 1049, 1051 (1985) (court properly ordered restitution for buy money because the police department could have recovered damages in a civil action for rescission and restitution; such an action would not be barred by the doctrine of *in pari delicto* because the police and the defendant are not equally culpable); *accord State v. Garcia,* 866 P.2d 5, 7 (Utah Ct.App.1993) ("[G]iven its lack of culpability in the drug transaction, [a drug strike force] has a civil basis for recovering its 'buy money' through the rescission of an illegal contract."); *see also Branham v. Stallings,* 21 Colo. 211, 215, 40 P. 396, 397 (1895) (recognizing public policy exceptions to the doctrine of *in pari delicto* ).

3. And there are good policy reasons to require Juanda to return his ill-gotten gains. *See Hendrickson v. State,* 690 N.E.2d 765, 768 (Ind.Ct.App.1998) (requiring the defendant to repay buy money "advances [the state's] public policy of ensuring that victims are reimbursed and defendants are prevented from being unjustly enriched by their criminal acts").

¶ 13 But it ultimately does not matter whether the DEA is "aggrieved," as that term is normally understood. A government agency may recover costs expressly authorized by the restitution statute, regardless of whether its legal rights have been infringed. *See Padilla–Lopez,* ¶¶ 17–18. And here, as noted, the legislature has expressly authorized recovery of both (1) money advanced by a law enforcement agency, and (2) extraordinary investigative costs. § 18–1.3–602(3)(a)–(b).

¶ 14 We conclude that the trial court's order is supported by the restitution statute. We therefore need not decide whether the order is separately supported by the statute that gives courts broad powers to impose conditions of probation. *See* § 18–1.3–202(1), C.R.S.2012 ("[T]he court may grant the defendant probation for such period and upon such terms and conditions as it deems best."); *see also Igbinovia v. State,* 111 Nev. 699, 895 P.2d 1304, 1309–11 (1995) (although court could not order repayment of buy

money under the restitution statute, similar orders were supported by the statute that governs conditions of probation); *State v. Taylor*, 104 N.M. 88, 717 P.2d 64, 72–73 (App.1986) (order of restitution for buy money was justified as a proper condition of probation).

¶ 15 The order is affirmed.

Judge TAUBMAN and Judge PLANK * concur.