James HAYNES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7457.

Court of Appeals of Alaska.

Jan. 19, 2001.

Rehearing Denied Feb. 2, 2001.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

James Haynes was convicted of misconduct involving a controlled substance in the third degree, a class B felony, for selling cocaine to an undercover police officer. Haynes contends that Superior Court Judge Mary E. Greene erred in failing to allow him to introduce evidence that a confidential in-

formant, who had introduced the undercover officer to Haynes, had later been indicted for possession of cocaine. Haynes also contends that Judge Greene erred in ordering him to pay $220 in restitution to the state for the money that the state used to buy the cocaine from him. Additionally, Haynes argues Judge Greene erred when she found that he was a third felony offender for presumptive sentencing purposes instead of a second felony offender. Haynes also argues that his seven-year sentence is excessive. We affirm.

As part of an undercover drug investigation in Fairbanks, Alaska State Trooper Investigators Rodney Pucak and Gary Johnson used informant James Moran to identify individuals who were selling cocaine and to introduce Investigator Pucak to these individuals. After Moran identified an individual who was selling cocaine, he would introduce Pucak to the individual so Pucak could purchase the cocaine.

Moran arranged to introduce Pucak to James Haynes, who was allegedly going to sell him an eightball (one eighth of an ounce) of cocaine. On August 10, 1998, Johnson and Pucak picked up Moran at his apartment and drove to Haynes's apartment building. When they arrived, Moran and Pucak left the vehicle; Moran went into Haynes's apartment building while Pucak waited outside. After a few minutes Moran came out of the building and told Pucak he had obtained the cocaine from Haynes. Pucak told Moran "that we would not be doing the transaction that way." Pucak still had the buy money on him.

Pucak accompanied Moran into the apartment building and waited in the hallway outside the apartment while Moran went into Haynes's apartment. After about one minute, Haynes opened the door and invited Pucak into the apartment. Haynes immediately took Pucak into the apartment's bathroom and closed the door. Moran did not enter the bathroom with them—he waited outside the bathroom in the apartment hall.

Inside the bathroom, Haynes handed Pucak a small ziplock baggie containing a white substance. Pucak questioned whether the amount was an eightball and Haynes told him the quantity in the baggie was all he was going to get for $220. Pucak handed Haynes the money and they left the bathroom. Pucak and Moran left the apartment and joined Johnson in the parked vehicle. Subsequent tests revealed that the white substance in the baggie was .5 or .7 grams of cocaine.

A Fairbanks grand jury indicted Haynes on one count of misconduct involving a controlled substance in the third degree. A jury convicted Haynes on this charge. Superior Court Judge Mary E. Greene found that Haynes was a third felony offender and sentenced him to an aggravated presumptive term of seven years. Judge Greene also ordered Haynes to pay $220 to the statewide drug enforcement unit as restitution for the buy money that the police used to purchase the cocaine.

■ Haynes contends that Judge Greene erred in refusing to allow him to introduce evidence that the day following Haynes's sale of cocaine to Investigator Pucak, the informant James Moran was arrested for possession of cocaine. During Haynes's cross-examination of Investigator Johnson, Haynes asked him if he was aware that Moran had been indicted for a crime. Johnson acknowledged that he was aware of this. But when Haynes tried to establish that Moran had been indicted for possession of cocaine, the state objected. Judge Greene directed the parties to go to the anteroom to allow Haynes to make an offer of proof. After the state represented that Moran was alleged to have possessed cocaine the day after Haynes's sale to Pucak, the following exchange occurred:

Haynes: I think [that evidence of Moran's indictment for possessing cocaine is] relevant because it goes to his connection with the police and with the state.

The Court: How?

Haynes: Well, he hasn't been sentenced yet in that case.

The Court: Okay. So you're trying to impeach somebody else's statements....

Prosecutor: Trying to impeach....

The Court: ... about whether or not he had anything—any possible reason to curry favor, is that it?

Haynes: I think it goes to his relationship with the state, Judge.

The Court: Well, tell me how?

Haynes: Well, it—obviously he hasn't been sentenced yet in the case.

The Court: You still have to make a better argument than that.

Haynes: I think that it goes to show that he had a relationship with the authorities that....

The Court: But it happened after [this] case.

Haynes: I still think it goes to show that he's within the state's control still.

The Court: So what[?] I mean he's not a witness. It happened after this event. So what does it matter if he's still in control?

Haynes: Well, he's not available I don't think.

The Court: Why?

Haynes: I'll just withdraw it, Your Honor.

The Court: Okay.

On appeal, Haynes argues that he did not withdraw his question and that because, at the conclusion of the anteroom conference, Judge Greene told the jury that she sustained the state's objection, she ruled against him. Regardless of Judge Greene's remark to the jury, the record shows that Haynes withdrew his question, apparently conceding that he could not establish a reason why the evidence was admissible.[1]

Furthermore, the offer of proof that Haynes did make, that the evidence was relevant to show Moran's connection with the police and the state, did not appear to offer relevant evidence because Moran was not a witness in the trial and the case against Haynes turned on the testimony of Investigator Pucak rather than Moran. Therefore, Haynes failed to make an offer of proof that established that the evidence he sought to have admitted was relevant.[2] Had Haynes not withdrawn his question, Judge Greene would not have erred in excluding the evidence.

Haynes next argues that Judge Greene erred in ordering Haynes to pay restitution in the amount of $220 to the statewide drug enforcement unit in order to repay the state for the money that it spent when it bought the cocaine from Haynes. Haynes supports his argument with citations to cases from other jurisdictions holding that restitution for buy money cannot be ordered at sentencing.[3] However, the cases Haynes cites involve interpretations of law from other states. In this state, the Alaska Supreme Court's decision in *Gonzales v. State*[4] is controlling.

Title 12 of the Alaska Statutes authorizes courts to award restitution both as a component of the sentence and as a term of probation. Under AS 12.55.015(a)(5) and 12.55.045(a), in fashioning a sentence,

[t]he court may order a defendant convicted of an offense to make restitution ... to the victim or other person injured by the offense, to a public, private, or private nonprofit organization that has provided or is or will be providing counseling, medical, or shelter services to the victim or other person injured by the offense, or as otherwise authorized by law.

Under AS 12.55.100(a)(2), in fashioning conditions of probation,

(a) [w]hile on probation and among the conditions of probation, the defendant may be required

(1) to pay a fine in one or several sums;

(2) to make restitution or reparation to aggrieved parties for actual damages or loss caused by the crime for which conviction was had.

In *Gonzales v. State*, the Alaska Supreme Court interpreted AS 12.55.100(a)(2), the restitution statute that applies to conditions of

---

**1.** *See Napier v. State*, 887 S.W.2d 265, 266–67 (Tex.App.1994).

**2.** *See* Alaska Evidence Rule 103(a)(2); *Wasserman v. Bartholomew*, 987 P.2d 748, 754 (Alaska 1999).

**3.** *See, e.g., People v. Chupp*, 200 Mich.App. 45, 503 N.W.2d 698 (1993); *State v. Murray*, 529 N.W.2d 453 (Minn.App.1995); *Igbinovia v. State*, 111 Nev. 699, 895 P.2d 1304 (1995); *State v. Newman*, 132 N.J. 159, 623 A.2d 1355 (1993).

**4.** 608 P.2d 23 (Alaska 1980).

probation.[5] Gonzales conceded that the court could order him to repay the state for money that the state spent to purchase cocaine from him. But Gonzales argued that the court should require him only to repay the profits he made from the drug transactions. The supreme court disagreed with Gonzales's contention, and concluded that the court could require him to pay back all of the money that the state had used to purchase cocaine from him:

> The restitution statute ... allows the court to order restitution "for actual damages or loss caused by the crime for which conviction was had." In construing a similar statute, the Oregon Supreme Court defined restitution as "the return of a sum of money ... which a defendant wrongfully obtained in the course of committing the crime." Here it seems clear that Gonzales wrongfully obtained $10,175.00 from the state in the course of his drug transactions, and that this sum represented "actual damages or loss" to the state.[6]

It is true that Gonzales did not challenge whether the court could require him to pay drug buy money to the state as restitution. But the supreme court's language appears to make it clear that the court found that the state was an aggrieved party that had suffered actual damages because it had paid drug buy money to Gonzales and was therefore entitled to restitution for this loss. *Gonzales* establishes that a court can order a defendant to pay restitution to the state for money that state used to buy drugs from a defendant when the restitution is fashioned as a condition of probation.

■ But Judge Greene ordered Haynes to pay restitution not as a condition of probation, but as part of his sentence. The statutes that govern awards of restitution as part of a sentence, AS 12.55.015(a)(5) and AS 12.55.045(a), authorize the court to order restitution "to the victim or other person injured by the offense." Haynes argues that the state is not a victim or other person who was injured by his offense. We find the *Gonzales* decision persuasive in interpreting these statutes. It seems anomalous to allow a court to enter an order requiring a defendant to pay restitution for buy money as a condition of probation but not to allow the court to fashion a restitution remedy as part of a sentence. In its decision, the court referred to the fact that Gonzales had "wrongfully obtained" the buy money and that the state thereby suffered "actual damages or loss." We accordingly conclude that the superior court has the authority to award restitution for drug buy money to the state both as a condition of probation and as part of a sentence.

Haynes was convicted of misconduct involving a controlled substance in the third degree, a class B felony. Haynes had two prior felony convictions. Judge Greene found that Haynes was a third felony offender, and therefore, faced the statutory presumptive sentence of six years of imprisonment.[7] Haynes conceded that the state established two aggravating factors: that Haynes was on probation or parole for another felony offense when he committed his current felony and that Haynes had a history of crimes similar to the offense for which he was being sentenced.[8] The state conceded that a mitigating factor applied to Haynes's offense: that his offense involved only a small quantity of drugs.[9] Judge Greene imposed an aggravated presumptive sentence of seven years of imprisonment.

■ Haynes contends that Judge Greene erred in sentencing him as a third felony offender. He contends that Judge Greene should have found that his two prior felony convictions should have been considered as a single conviction. Haynes's argument rests on AS 12 .55.145(a)(1)(C), which states that "two or more convictions arising out of a single continuous criminal episode during which there was no substantial change in the nature of the criminal objective are considered a single conviction unless the defendant

---

5. *See id.* at 26.

6. *Id.* (citations omitted).

7. *See* AS 12.55.125(d)(2).

8. *See* AS 12.55.155(c)(20), (21).

9. *See* AS 12.55.155(d)(14).

was sentenced to consecutive sentences for the crimes."

The history of Haynes's prior felony convictions illustrates that he committed his two prior felony offenses several months apart. On November 17, 1996, Haynes sold .3 grams of cocaine to a consumer. On June 4, 1997, Haynes pled no contest to one charge of misconduct involving a controlled substance in the third degree[10] for this activity. The court sentenced Haynes to three years with eighteen months suspended and placed him on probation for four years following his jail time.

On February 5, 1996, Haynes was contacted by the police on an outstanding traffic warrant. After the police arrested him in his hotel room, they searched his room pursuant to a warrant and found cocaine. Haynes was convicted of misconduct involving a controlled substance in the fourth degree,[11] a class C felony. On June 27, 1997, the court sentenced Haynes to serve eighteen months for this conviction, concurrent with his former conviction.

The legislative commentary to AS 12.55.145 makes it clear that Haynes's prior convictions do not qualify as "a single continuous criminal episode." According to the legislative commentary:

> The phrase "single, continuous episode" is intended to limit the applicability of this provision to a single criminal event out of which a number of offenses could be charged. For example, the breaking and entering of a building with the intent to commit theft, which can be charged as burglary, and the taking of property in the building which can be charged as theft. In such an instance, conviction for both burglary and theft would be considered a single conviction under this section. However, the commission of three burglaries involving three buildings in a single day, would not be considered part of a "single, continuous criminal episode". Similarly, the phrase "substantial change in the na-

ture of the criminal objective" is intended to limit the applicability of the provision to a single criminal objective. In the preceding example, the criminal objective is to obtain property and the breaking and entering is an incident of that objective. However, assume that the defendant takes a hostage to facilitate his flight, then decides to commit a sexual assault on the hostage. He is subsequently convicted of burglary, theft, kidnapping and sexual assault. In such a circumstance the defendant would have been convicted of three prior offenses for purposes of this section, burglary-theft, kidnapping and sexual assault.[12]

Haynes's two prior convictions were for crimes that he committed in November of 1996 and February of 1996. One charge involved the sale of cocaine; the other possession of cocaine. Other than the fact that both convictions involved cocaine, there is simply no reason to find that both convictions should be considered to be part of a "single continuous criminal episode." Had Haynes sold cocaine and then, pursuant to a reasonably contemporaneous search, been found in possession of more cocaine, the convictions for sale of cocaine and possession of cocaine might be considered part of a "single continuous criminal episode." But given the passage of time and the lack of connection between the two offenses, Haynes has not established that his convictions should have merged into a single conviction for purposes of presumptive sentencing.

■ Haynes argues that the seven-year sentence that Judge Greene imposed is excessive. But, as a third felony offender, Haynes faced a presumptive sentence of six years of imprisonment. In sentencing Haynes, Judge Greene placed great weight on the fact that Haynes had just recently been released from prison on his former drug offenses and was on probation on his former drug offenses when he committed his present

---

**10.** AS 11.71.030(a).

**11.** AS 11.71.040(a)(3)(A).

**12.** *Linn v. State,* 658 P.2d 150, 152 (Alaska App. 1983) (quoting 2 Senate Journal Supplement No. 47, at 157–58 (June 12, 1978)).

 

offense. She concluded from Haynes's past record of offenses, his failures on probation, and his violation of prison rules that Haynes was a poor candidate for probation and had poor prospects for rehabilitation. Judge Greene's findings are supported by the record and support the sentence she imposed.

We conclude that the sentence is not clearly mistaken.

AFFIRMED.