# IN THE COURT OF APPEALS OF IOWA

No. 20-0629
Filed April 28, 2021

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**GABRIEL JAUREGUI,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Tod Deck, Judge.

Gabriel Jauregui appeals an order for victim restitution. **DISTRICT COURT ORDER VACATED AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Mullins, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**SCOTT, Senior Judge.**

Gabriel Jauregui appeals an order for victim restitution following his guilty-plea conviction.[1] He claims the "district court erred in assessing restitution which was not causally related to the admitted acts underlying the offense of conviction, and in an amount unsupported by the evidence."

## I. Background

Jauregui was charged with various crimes for conduct occurring in March 2019. He ultimately entered into a plea agreement with the State, pursuant to which he would plead guilty to one count of attempting to entice a minor in return for the State's dismissal of the remaining charges. In the written plea agreement, Jauregui admitted he attempted to entice an eleven-year-old female to provide him with nude photos of herself, he possessed the requisite specific intent, he did so with the purpose of arousing or satisfying his sexual desires, he reasonably believed the child was under thirteen, and he had no authority to commit the act. He echoed these acknowledgements at the plea and sentencing hearing. The court imposed sentence but set the issue of victim restitution for a separate hearing.

The victim's mother submitted a victim impact statement detailing the emotional trauma the family suffered as a result of Jauregui's actions, which resulted in "lost wages" due to the mother missing work to deal with the child's emotional fallout. She submitted a pecuniary damages statement requesting

---

[1] The State agrees Jauregui has good cause to appeal because he is challenging a component of his sentence as opposed to his guilty plea. *See* Iowa Code § 814.6(1)(a)(3) (Supp. 2019); *State v. Damme*, 944 N.W.2d 98, 104–05 (Iowa 2020).

$4944.00 in restitution as a result of her lost wages, attached to which were the mother's time cards detailing her work schedule.[2]

The single mother is an oncology nurse. She earns $25.75 per hour plus a 10% night differential. Her shifts range from twelve to sixteen hours, but if she utilizes paid-time off (PTO), she is only allowed to use up to twelve hours per day. The child first disclosed her allegations on April 2, which were relayed to the mother by law enforcement. The mother missed her scheduled shift on this date, and it appears she utilized 5.53 hours of PTO. She also missed the entirety of her shift on April 5, the day prior to which the mother took the child to a child advocacy center for examination. The child did okay though most of April, but come early May, she began to struggle again due to the circulation of rumors at school. The mother missed her shifts on May 2 and 3 as a result thereof. It appears she utilized 6.82 hours of PTO on May 2. The mother also missed her shifts on May 21 and 22. It appears she utilized 20.58 hours of PTO on these dates. On June 17, the mother reported for her shift but left early to tend to the child, and it appears she was compensated for four hours of work and she used 9.5 hours of PTO. She also missed her shifts on June 26 and July 2 and 3. It appears she used 8.02 hours of PTO on July 2.[3] She testified she missed her shifts on August 3, 4, 11, 12, and 25.[4]

---

[2] We note the time cards are somewhat difficult to decipher and are illegible in some respects.

[3] The time cards also show the mother took leave under the Family and Medical Leave Act (FMLA). The mother's testimony indicates she was not compensated for this leave. We reject Jauregui's interpretation of the mother's testimony to the contrary.

[4] There was no other documentary evidence the mother missed her August shifts.

Following a restitution hearing, the court entered an order for victim restitution in favor of the mother in the amount of $4944.00. Jauregui appeals.

## II. Standard of Review

Our review is for legal error, and our sole task is to "determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. DeLong*, 943 N.W.2d 600, 604 (Iowa 2020) (quoting *State v. Jenkins*, 788 N.W.2d 640, 642 (Iowa 2010)).

## III. Analysis

Jauregui challenges the order for restitution on two grounds: (1) "the claim bears an insufficient causal relationship to the admitted acts underlying [his] offense" and (2) "the amount of restitution ordered is not supported by the evidence."

The court is required to "order that restitution be made by each offender to the victims of the offender's criminal activities." Iowa Code § 910.2(1). Restitution includes "pecuniary damages," which

> means all damages to the extent not paid by an insurer on an insurance claim by the victim, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.

*Id.* § 910.1(3)–(4). "'Victim' means a person who has suffered pecuniary damages as a result of the offender's criminal activities." *Id.* § 910.1(5). The party seeking restitution "must show a causal connection between the underlying crime and the amount claimed." *DeLong*, 943 N.W.2d at 605. "[A] victim must 'prove a prima facie case of liability premised on some civil theory.'" *State v. Shears*, 920 N.W.2d 527, 536 (Iowa 2018) (quoting *State v. Starkey*, 437 N.W.2d 573, 574 (Iowa 1989)).

"[I]n order to support a civil theory of liability, proximate cause [is] a necessary element." *Id.* "[T]he standard of causation generally applicable in civil matters controls the scope of restitution under the statute." *Id.* at 539.

Jauregui first claims "[t]he state of the law regarding the causation standard applied to criminal restitution issues is unclear." He highlights *State v. Roache*, 920 N.W.2d 93, 96 (Iowa 2018), where our supreme court held "the scope-of-liability analysis in sections 29 and 33 of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (Am. Law Inst. 2010) [hereinafter Restatement (Third) of Torts] applies to criminal restitution determinations," and *Shears*, 920 N.W.2d at 540, which was filed two weeks after *Roache*, where the court questioned "whether we should utilize the tort concepts recently adopted from the Restatement (Third) of Torts, *see Thompson* [*v. Kaczinski*], 774 N.W.2d [829,] 839 [(2009)], or statically apply concepts of prior tort law in existence at the time the statute was enacted in 1982." The *Shears* court proceeded to analyze causation under both standards and concluded the result would be the same under either. *Shears*, 920 N.W.2d at 541–45. But the *Shears* court did not disavow *Roache*, and it characterized "the scope-of-liability analysis of *Thompson*," as "cleaner." *Id.* at 541. While we are somewhat curious why the *Shears* court did not specifically adhere to its recent adoption in *Roache*, we find the court's specific adoption of the *Thompson* analysis as to causation for restitution purposes more compelling and, thus, controlling. And the supreme court recently signaled that the *Thompson* standard applies to criminal restitution. *See State v. Waigand*, 953 N.W.2d 689, 694–95 (Iowa 2021) ("The defendant's criminal conduct must have been the cause

in fact of the loss and within the scope of liability." (citing *Shears*, 920 N.W.2d at 541 (applying *Thompson*, 774 N.W.2d at 837))).

Under the *Thompson* standard, we consider whether Jauregui's conduct was a factual cause of damages and whether the damages fall within the scope of liability. *See id.*; *Roache*, 920 N.W.2d at 102–103. Determining factual causation contemplates a "but for" test:

> [T]he defendant's conduct is a cause in fact of the [victim]'s harm if, but-for the defendant's conduct, that harm would not have occurred. The but-for test also implies a negative. If the [victim] would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm.

*Roache*, 920 N.W.2d at 101 (first alteration in original) (quoting *Berte v. Bode*, 692 N.W.2d 368, 372 (Iowa 2005)). Upon our review of the evidence, we easily find Jauregui's conduct was a factual cause of the mother's lost wages. But for his acts, the child would have never suffered emotional trauma and suicidal behavior, thus resulting in this single mother having to take time off work to tend to the child's emotional well-being and safety. As the mother put it, she could not leave the child unattended at home during her long shifts or she might not have had "a daughter to come home to."

We turn to the scope of liability. This inquiry "is fact-intensive as it requires consideration of the risks that made the actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks." *Id.* (quoting *Thompson*, 774 N.W.2d at 838). "An actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious." Restatement (Third) of Torts § 29. In determining whether

the [victim]'s harm is beyond the scope of liability as a matter of law, courts must initially consider all of the range of harms risked by the defendant's conduct that the jury *could* find as the basis for determining [the defendant's] conduct tortious. Then, the court can compare the [victim]'s harm with the range of harms risked by the defendant to determine whether a reasonable jury might find the former among the latter.

*Roache*, 920 N.W.2d at 101 (second alteration in original) (quoting *Thompson*, 744 N.W.2d at 838). The scope of liability is broader for some torts: "An actor who intentionally or recklessly causes harm is subject to liability for a broader range of harms than the harms for which that actor would be liable if only acting negligently" but is "not subject to liability for harm the risk of which was not increased by the actor's intentional or reckless conduct." *Id.* at 101–02 (quoting Restatement (Third) of Torts § 33(b), (c)). For example, a pedestrian being stricken by a negligent driver is one of the potential harms resulting from negligent driving and falls within the scope of liability. Restatement (Third) of Torts § 29, cmt. a, ill. 1. But a child dropping a loaded shotgun on her foot and breaking her toe would not be within the scope of liability for the act of an adult giving the child the gun, because the potential harm would be that the child would shoot someone with it, not drop it on her foot. *Id.* cmt. d, ill. 3.

We first consider the range of harms risked that could be used to formulate a basis Jauregui's conduct was tortious. Certainly, the emotional trauma and suicidal behavior on the part of a young child resulting from Jauregui's admitted conduct falls within that range. And Jauregui's conduct went beyond negligence, so he is subject to a broader range of harms. *See Roache*, 920 N.W.2d at 101–02. We find that the risk of a single parent of a young child would have to provide heightened care and attention to a traumatized child also falls within the range of

harms risked by Jauregui's conduct, as does the risk that such a parent would be required to miss work and forgo income. So we find the risks of harm fall within the scope of liability and causation exists. We reject Jauregui's claims certain events—the child undergoing a rape examination, the opening of a child welfare investigation, and bullying at school—amount to intervening or superseding causes sufficient to cut off liability. In this day and age, those events are normal and foreseeable consequences of Jauregui's admitted conduct. So the subsequent events were insufficient "to break the chain of causal events between" Jauregui's conduct and the victim's injury. *See Hayward v. P.D.A., Inc.*, 573 N.W.2d 29, 32 (Iowa 1997).

We turn to Jauregui's challenge to the sufficiency of the evidence supporting the award of restitution. Jauregui first challenges the court awarding the mother amounts for hours of which she utilized PTO. The State only addresses the first day the mother missed, April 2, when she burned 5.53 hours of PTO. The State appears to agree the mother's award should not reflect time the mother was compensated due to using PTO. But our interpretation of the evidence discloses she used PTO on several other occasions. Over the fifteen days the mother alleged to have missed work, she utilized 50.45 hours of PTO. The mother has since discontinued her employment, and there was no evidence that she could have cashed these hours in when her employment ended or that the hours otherwise had value. So we agree the mother is not entitled to restitution for these hours, as she should not be compensated by both her employer and Jauregui. *See Roache*, 920 N.W.2d at 100 (noting one of the purposes of the restitution statutes is "to prevent the victim from receiving a windfall" (citation omitted)).

Jauregui also points out the mother was compensated for four hours of work on June 17, so she should not be allowed restitution attributable to those hours. We agree. *See id.* Lastly, Jauregui argues the evidence is insufficient to support awarding the mother restitution for the shifts she testified to have missed in August, given the fact that no documentary evidence was presented given those shifts. Without any evidence to show the amount of PTO the mother took on those dates, we agree the evidence was insufficient to support awarding the mother restitution for those dates. As noted, we reject Jauregui's interpretation of the mother's testimony as to FMLA leave.

Having examined the sufficiency of the evidence and found insubstantial evidence on various fronts, we determine an award in the amount of $1900.00[5] is supported by substantial evidence. *See DeLong*, 943 N.W.2d at 608. We vacate the district court's restitution order and remand the matter to the district court to enter an order for restitution in that amount.

**DISTRICT COURT ORDER VACATED AND REMANDED.**

---

[5] This figure is slightly rounded up from the product of the mother's hourly pay, $28.33 ($25.75 plus her 10% night differential), and the amount of unpaid leave the mother took that is supported by substantial evidence, 67.05 hours (6.47 on April 2; 12.00 on April 5; 5.18 on May 2; 12.00 on May 3; 0.00 on May 21; 3.42 on May 22; 0.00 on June 17; 12.00 on June 26; 3.98 on July 2; and 12.00 on July 3).